IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

KAVEH SARI,                              )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )
                                         )   Case No. 1:14-cv-1454 (GBL)
AMERICA'S HOME PLACE, INC.,              )
                                         )
                                         )
        Defendant.                       )
                                         )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant America's Home Place, Inc.

("AHP")'s Motion for Summary Judgment (Doc. 66). This case involves Plaintiff Kaveh Sari

("Sari")'s claim that AHP infringed on his copyright in architectural plans in violation of the

Copyright Act, 17 U.S.C. § 101, *et seq* and AHP's Counterclaims.

There are six issues before the Court. First, whether the Court should grant AHP's

Motion for Summary Judgment where AHP argues that Sari does not meet the first element of a

copyright infringement claim because no reasonable jury could find that Sari owns a valid

copyright. Second, whether the Court should grant AHP's Motion for Summary Judgment

where AHP argues that no reasonable jury could find that Sari provided the required notice for

copyright protection. Third, whether the Court should grant AHP's Motion for Summary

Judgment where AHP argues that Sari should be estopped from bringing his claim because he

deliberately concealed his belief that he owned a copyright and AHP reasonably relied on that

misrepresentation. Fourth, whether the Court should grant AHP's Motion for Summary

Judgment where AHP argues that no reasonable jury could find that Sari meets the second

element of a copyright infringement claim because AHP's work is not substantially similar to Sari's work. Fifth, whether, provided AHP prevails on summary judgment, AHP is entitled to reasonable attorneys' fees. Sixth, whether, provided AHP prevails on summary judgment, AHP is entitled to a permanent injunction.

The Court finds that (1) because AHP effectively rebuts the presumption of validity that Sari's copyright registration carries, no reasonable jury could find that Sari owns a valid copyright, and thus, the Court must grant AHP's Motion for Summary Judgment; (2) Sari's lack of notice is not dispositive because copyrights created after March 1, 1989 do not require notice; (3) Sari is not equitably estopped from bringing his claim; (4) no reasonable jury could find that AHP's architectural work is similar to Sari's, and thus, the Court must grant AHP's Motion for Summary Judgment; (5) Sari's belief that he owned a valid copyright was not so objectively unreasonable as to warrant the award of attorneys' fees; and (6) AHP did not suffer irreparable harm such that it would be entitled to a permanent injunction. Therefore, the Court GRANTS AHP's Motion for Summary Judgment and the Court DENIES AHP's request for attorneys' fees and a permanent injunction.

## I. BACKGROUND

Plaintiff Kaveh Sari is a Virginia businessman who owns an IT consulting company. (Doc. 66-1 at 32–33). Defendant America's Home Place, Inc. is a custom home builder domiciled in the state of Georgia. (Am. Compl. ¶¶ 6–7). Sometime in January 2013, Sari began discussions with Keith Hewston ("Hewston"), a building consultant with AHP, about the possibility of building a home in Lorton, Virginia. (Doc. 68-1 at 2). In March 2013, Sari contracted with architect Ken Reed ("Reed") who visited the home of Sari's former neighbor,

Mr. Lee, and used the site visit to draw up plans ("Reed Plans")[1] for a home identical to Mr.

Lee's house. (Doc. 66-3 at 18, 21; Doc. 66-4 at 20).

Sari forwarded the Reed Plans to AHP on April 19, 2013 (Doc. 68-1 at 36–37; Doc. 68-

10) and on May 25, 2013, Hewston sent Sari preliminary plans for the proposed house. (Doc. 68-

12 at 4–11).  On August 17, 2013, Sari and AHP entered into a contract to build his home. (Doc.

68-1 at 9; Doc. 68-13).  Afterwards, Sari made ten changes to the Reed Plans.

1. Added stone and stucco to the façade. (Doc. 66-3 at 11).

2. Replaced the two first-floor center windows on the front of the house with one
   large window. (*Id.* at 8).

3. Adjusted the sloping lot and added two small basement windows on the right
   side of the front of the house. (*Id.* at 11).

4. Added an interior door leading to the study where originally there was an
   open entrance. (*Id.* at 10).

5. Added eight windows arranged in a tic-tac-toe pattern on the rear of the house
   where the fireplace was located. (*Id.* at 12).

6. Moved the fireplace to an interior wall. (*Id.* at 12–13).

7. Added French doors on the basement level creating a walkout basement. (*Id.*
   at 12).

8. Added a pantry to the backside of the kitchen where the laundry room was
   located. (*Id.* at 13).

9. Moved the laundry room to the second floor. (*Id.*).

10. Extended the left-exterior wall at the rear of the house so that it was flush with
    the garage. (*Id.* at 14).

On March 11, 2014, AHP sent Sari the building plans with Sari's requested changes

("Highlighted Plans"). (Doc. 68-16).  By April 2014, the relationship between Sari and AHP

---

[1] Reed may have also used a set of plans—the "Rothschild Plans" (Doc. 68-4)—from another of Sari's former
neighbors when drafting the Reed Plans. (Doc. 68-6). It is immaterial, however, whether Reed exclusively used the
site visit to draft the Reed Plans, or if he also used the Rothschild Plans, as they were the same layout. (*See* Doc. 66-
3 at 19 ("[T]hey're all the same.  Mine was a Rothschild, Mr. Lee's was a Rothschild.")).

began to dissolve over disputes regarding the project's cost, and the parties eventually ended their agreement through arbitration. (Am. Compl. ¶¶ 9–10). On September 30, 2014, AHP finalized building plans ("Chen Plans") for another family, the Chens. (Doc. 69-1; Doc. 69-2). On October 15, 2014, Sari sent an email to AHP employees and others indicating that he believed AHP was infringing on his copyright of the Highlighted Plans by building the house described in the Chen Plans. (*See* Doc. 70-1).

On November 17, 2014, upon Sari's request, Reed signed any rights he owned in the Reed Plans over to Sari. (Doc. 75-1 at 18). Reed voiced doubts about whether Sari could enforce a copyright in the Reed Plans, though, and he expressly declined to be a part of Sari's lawsuit. (Doc. 66-4 at 19–20; Doc. 70-2; Doc. 70-3). On November 18, 2014, Sari applied for copyright registration on the Reed Plans. (Doc. 75-1 at 20). After the Copyright Office emailed Sari expressing confusion as to what exactly Sari was attempting to register (*see* Doc. 70-6), Sari sent the Copyright Office the Highlighted Plans. (Doc. 66-2 at 1–4). On February 9, 2015, the Copyright Office registered Sari's copyright in the Highlighted Plans as a derivative work. (Doc. 75-1 at 49).

On October 31, 2014, Sari, proceeding pro se, filed a complaint against AHP alleging copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101, *et seq*. Sari filed an amended complaint on December 31, 2014 (Doc. 21), and AHP filed its Answer on January 14, 2015 asserting counterclaims for (1) declaratory relief, (2) fraud on the copyright office, (3) injunctive relief, and (4) attorneys' fees. (Doc. 24). Following discovery, AHP filed its Motion for Summary Judgment (Doc. 66) on June 22, 2015.

4

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247–48).

A "material fact" is a fact with the propensity to affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477

U.S. at 248).  Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its

own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*,

477 U.S. 317, 324 (1986).

## III. ANALYSIS

### A. Motion for Summary Judgment

The Court GRANTS AHP's Motion for Summary Judgment because no reasonable jury

could find that Sari meets either element of a copyright infringement claim as (1) Sari does not

own a valid copyright in the Highlighted Plans, and (2) the two works at issue—the Chen Plans

and the Highlighted Plans—are not substantially similar.  A copyright infringement claim has

two elements.  First, the plaintiff must establish ownership of a valid copyright. *Feist*

*Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Second, the plaintiff must

show that the defendant copied original parts of the copyrighted work. *Id.*  AHP argues (1) that

no reasonable jury could find that Sari meets the first element of a copyright infringement claim

because he owns no valid copyright; (2) that no reasonable jury could find that Sari gave the

statutorily-required notice to maintain a valid copyright; (3) that Sari should be equitably

estopped from bringing his claim; (4) that no reasonable jury could find that Sari meets the

second element of a copyright infringement claim because the Chen Plans are not substantially

similar to the Highlighted Plans; (5) that the Court should grant AHP reasonable attorneys' fees;

and (6) that the Court should issue a permanent injunction barring Sari from filing additional

copyright registrations and additional suits against AHP.  The Court will address AHP's

arguments in turn.

6

**1. Ownership of a Valid Copyright**

The Court grants AHP's Motion for Summary judgment because no reasonable juror could find that Sari's copyright registration is valid as the Highlighted Plans contain no individually original elements, and the overall arrangement of those elements is not protectable under the AWCPA as it serves a functional and not a design purpose.

A valid copyright requires an "original work[] of authorship fixed in a tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated" including "architectural works." 17 U.S.C. 102(a). Of paramount importance is the work's originality. *Feist*, 499 U.S. at 346 ("Originality is a constitutional requirement."). The originality requisite for copyright protection requires "independent creation plus a modicum of creativity." *Id.* (citing *In re Trade-Mark Cases*, 100 U.S. 82, 94 (1879)). A valid copyright registration serves as *prima facie* evidence of originality, shifting the burden to the defendant to show that the copyright is invalid. *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010). However, "the Copyright Office's practice of summarily issuing registrations . . . counsels against placing too much weight on registrations as proof of a valid copyright." *Id.*

Derivative works are copyrightable, but the copyright in a derivative work "extends only to the material contributed by the author of such work . . . and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b). Originality in a derivative work is a low bar requiring only a "faint trace of originality and . . . a distinguishable variation." *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 438 (4th Cir. 1986). However, "the copyright in a derivative work is thin." *Harvester, Inc. v. Rule Joy Trammell + Rubio, LLC*, 716 F. Supp. 2d 428, 438–39

7

(E.D. Va. 2010) (quoting *Schrock v. Learning Curve Int'l, Inc.,* 586 F.3d 513, 521 (7th Cir.

2009). The copyright protection afforded to an architectural work is similarly thin. *Id.*

In 1990, Congress passed the Architectural Works Copyright Protection Act ("AWCPA")

allowing for copyright protection of buildings and architectural plans created subsequent to the

Act. *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.,* 43 F. Supp. 3d 644, 658

(E.D. Va. 2014) *aff'd,* No. 14-2030, 2015 WL 3854494 (4th Cir. June 23, 2015). The AWCPA

allowed owners of architectural works to protect "the overall form as well as the arrangement

and composition of spaces and elements in the design, but does not include individual standard

features." 17 U.S.C. § 101. Persons may not register copyrights on "[s]tandard configurations of

spaces, and individual standard features, such as windows, doors, and other staple building

components." 37 C.F.R. § 202.11. Purely utilitarian aspects of a work are similarly not

protectable. *Universal Furniture,* 618 F.3d at 429–30.

At the outset, the Court finds that the Reed Plans, assigned to Sari by Reed at Sari's

request, are not copyrightable because they are not original.[2] The record shows that the Reed

Plans were not a work of "independent creation" and they did not contain "creativity." Sari paid

Reed $500 to copy an existing, apparently quite common, floor plan. (*See* Doc. 66-3 at 19

(explaining that Sari, Mr. Lee, and at least one other neighbor lived in houses with the same floor

plan)). The deposition of Sari on April 2, 2015, makes the lack of originality abundantly clear:

> Q.   And so, you said you paid Mr. Reed $500 to draw Mr. Lee's house, right?
> A.   Yes.

(Doc. 66-4 at 17).

> Q.   So, the plans that Mr. Reed gave to America's Home Place are identical to
> Mr. Lee's House –

---

[2] AHP gives several arguments for why the transfer of ownership was invalid—lack of consideration, violation of the statute of frauds, etc. The Court need not address these here because the Reed Plans were plainly a copy of existing plans.

A.    Correct.

Q.    — at 9412 Braymore?

A.    Yes.

(Doc. 66-3 at 21).

Originality is the *sine qua non* of copyright. *Feist*, 499 U.S. at 345. As the Reed Plans lack originality, neither Reed, nor Sari, nor AHP for that matter, has ownership of them. Notably, Reed himself expressed doubts about Sari's ability to copyright the plans. (Doc. 70-3).

The Highlighted Plans similarly lack the element of originality required for a valid copyright. Because Sari obtained a registration on the Highlighted Plans as a derivative work (Doc. 75-1 at 49), the burden shifts to AHP to rebut the presumption of validity that comes with a registration from the Copyright Office. AHP does so by pointing out that each element of Sari's work is either unoriginal—in that Sari got the idea for it from someone or something else—or is not protectable under the AWCPA. (Doc. 67-1 at 17–20). The record provides that Sari's ideas for the ten modifications came from other people's suggestions or from other houses online or in the area. (*See, e.g.*, Doc. 66-3 at 23–30 (explaining that the tic-tac-toe windows came from a picture on Quaker Custom Homes' website and that the stone and stucco idea came from a neighbor's house, etc.)).

While none of Sari's individual changes are original, Sari claims that his copyright is in "a combination of a number of changes." (Doc. 66-3 at 15). Sari is correct that it is possible to obtain a copyright in the arrangement of unoriginal, un-protectable elements. *Universal Furniture*, 618 F.3d at 430 ("The mere fact that component parts of a collective work are neither original to the plaintiff nor copyrightable by the plaintiff does not preclude a determination that the combination of such component parts as a separate entity is both original and copyrightable." (citations and quotation marks omitted)). However, in Sari's case, his arrangement falls within

9

the functional exception. *Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*, 977 F. Supp. 2d 567, 593 (E.D. Va. 2013) ("The Act also does not protect . . . design elements that are functionally required." (citations omitted)).  Sari's arrangement of a laundry room on the second floor, a pantry next to the kitchen, an expanded left exterior wall, a different fireplace location to allow more windows and more natural light, and an additional door in the study and in the basement all serve to make the space more livable, not to make a design statement.  The only element Sari contributed that arguably goes toward design is the incorporation of stone and stucco on the façade, staple building components not protectable under the AWCPA. *See* 37 C.F.R. § 202.11.  The Court notes also that given the ubiquity of the floor plan used, the Highlighted Plans likely fall into the "standard configuration" exception as well, as there are a finite number of ways to arrange the elements of such a common layout. *Cf. Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1326 (11th Cir. 2012) ("[T]here are only a limited number of ways to turn a rectangular building into a sports bar and restaurant.").

Additionally, AHP argues that the Court should invalidate Sari's copyright because Sari purposefully misrepresented facts before the Copyright Office.  Because AHP raises the issue of fraud on the Copyright Office as a counterclaim (Answer ¶¶ 29–38), the Court will address it briefly.  The Court finds no support for the proposition that Sari defrauded the Copyright Office. Sari sent the Copyright Office a two-page file containing the Reed Plans and when asked for clarification, Sari sent the Highlighted Plans and specified that he sought a copyright in a derivative work. (Doc. 66-2 at 1–4).  It is clear from Sari's emails with the Copyright Office (Doc. 70-6) that while he should have sent the Highlighted Plans to begin with, he was forthcoming and had no intent to deceive the Copyright Office.  However, while Sari did not defraud the Copyright Office, AHP effectively rebuts the presumption of validity that Sari's

copyright registration carries, no reasonable jury could find that Sari owns a valid copyright, and the Court grants AHP's Motion to Dismiss.

**2. Notice**

The Court rejects AHP's argument that if Sari owns a copyright it should be invalidated for want of "statutorily-required notice" because the copyright that Sari claims originated after March 1, 1989, and thus does not require notice. *Charles Garnier, Paris v. Andin Int'l, Inc.*, 844 F. Supp. 89, 93 (D.R.I. 1994) ("Effective as of March 1, 1989, the copyright law was again amended . . . it made copyright notice permissible rather than mandatory."). In 1989, Congress passed the Berne Convention Implementation Act of 1988 ("BCIA") and the United States joined the Berne Convention, an international agreement governing copyright law. *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 48 (5th Cir. 1995). Among the changes implemented was that, "as to works published after March 1, 1989, the BCIA excuses all copyright notice requirements as a condition to copyright." *Bryce & Palazzola Architects & Associates, Inc. v. A.M.E. Grp., Inc.*, 865 F. Supp. 401, 405 (E.D. Mich. 1994) (quoting Nimmer on Copyright § 7.02(C)). Notably, the Berne Convention also required the United States to begin recognizing copyrights in architectural works, which resulted in the passage of the AWCPA. *T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 109 (1st Cir. 2006). In this case, none of the changes Sari made to the Reed Plans that could have resulted in the creation of a copyright occurred before 2013. (*See* Doc. 68-1 at 9). Therefore, Sari's omission of a copyright symbol or other forms of notice on the Highlighted Plans is not dispositive and the Court rejects AHP's argument that Sari's copyright is invalid for lack of notice.

11

## 3. Equitable Estoppel

The Court rejects AHP's argument that Sari should be equitably estopped from bringing his claims because it finds no evidence that Sari willfully misrepresented his intent to copyright the Highlighted Plans. AHP properly points out that the elements of equitable estoppel are

(1) that the plaintiff had actual or constructive knowledge of the truth of a matter; (2) that he misrepresented or concealed material facts to the defendant; (3) that he intended or expected the defendant to rely upon those misrepresentations or concealments; (4) that the defendant did so act; and (5) that his reliance was both reasonable and detrimental.

*Tavory v. NTP, Inc.*, 495 F. Supp. 2d 531, 537 (E.D. Va. 2007) (citations omitted). "To constitute estoppel there must be deception relied on by the other to his detriment." *U. S. for Use & Benefit of Humble Oil & Ref. Co. v. Fid. & Cas. Co. of N.Y.*, 402 F.2d 893, 897–98 (4th Cir. 1968) (citations omitted).

AHP argues that Sari was deceptive because he concealed his belief that he owned a copyright in the Highlighted Plans, and because Sari "intended for AHP to rely on his representations: without those representations, AHP would not have been able to prepare multiple versions of building plans for Sari." (Doc. 67-1 at 29). It is unclear why Sari would feel obliged to discuss copyrights with the builder building *his* custom home. If any party would have a reason to discuss the ownership of the derivative copyright in the Highlighted Plans it would be AHP, the party that copyrights architectural plans as part of its business. (*See, e.g.*, Doc. 69-1). Further, AHP's argument seems to be that it relied on Sari's lack of copyright interest in the Highlighted Plans to "prepare multiple versions of building plans for Sari," but it does not state why this would be the case. The implication is that if AHP knew that Sari owned a valid copyright in the plans for his own house, then AHP could not continue working with Sari. It seems that something is missing from AHP's estoppel argument because its logic is not readily

12

apparent. Detrimental reliance in this circumstance would be that AHP reasonably relied on Sari's lack of copyright interest in using the Highlighted Plans for the Chens' house. Either way, the record does not bear out willful deception or concealment on the part of Sari and therefore, the Court will not invoke the doctrine of equitable estoppel.

## 4. Copying of Original Elements

The Court grants AHP's Motion for Summary Judgment because even if Sari had a valid copyright, no reasonable jury could find that AHP copied original elements from Sari's plans as the Chen Plans are not substantially similar in terms of the protected elements to the Highlighted Plans.

Absent direct proof that the defendant copied the plaintiff's work, courts look at whether the defendant had access to the plaintiff's work and whether the two works are "substantially similar." *Universal Furniture*, 618 F.3d at 435. Substantial similarity involves a two-part test in which the plaintiff must show that the works are (1) "extrinsically similar because they contain substantially similar ideas that are subject to copyright protection" and (2) "intrinsically similar in the sense that they express those ideas in a substantially similar manner from the perspective of the intended audience of the work." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001) (internal citations and quotation marks omitted). While extrinsic similarity is an objective test where "expert testimony may be relevant" and the "analysis looks to external criteria of substantial similarities in both ideas and expression," the intrinsic test looks at "the total concept and feel of the works, but *only* as seen through the eyes of the . . . intended audience of the plaintiff's work." *Universal Furniture*, 618 F.3d at 435–36 (internal citations and quotation marks omitted). The two-part substantial similarity test is appropriate for copyright

13

infringement claims dealing with architectural works. *See Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*, 496 F. App'x 314 (4th Cir. 2012).

### a. Extrinsic Similarity

The Court grants AHP's Motion for Summary Judgment because Sari fails to meet the first element of the substantial similarity test as no reasonable jury could find that the Chen Plans are extrinsically similar to the Highlighted plans. The court in *Humphreys* gives the test for extrinsic similarity in the context of architectural works: "to conduct the extrinsic prong of the substantial similarity inquiry properly, the elements or features of a given design must first be disaggregated to determine whether each individual element or feature is protectable. And then, if necessary, it must be determined whether the *overall arrangement* of those elements warrants copyright protection under the AWCPA." 43 F. Supp. 3d at 668. Features not protected under the AWCPA are "individual standard features, standard configurations of spaces, and functionally required elements." *Id.* (citing 17 U.S.C. § 101). A court must then determine whether a reasonable jury could find that any of the protected elements are extrinsically similar between the two works and whether, if the arrangement as a whole is subject to copyright protection, any reasonable jury could find that the arrangement of the two works is substantially similar. *Id.* at 669.

In the present case, the Court must therefore determine first whether any of the ten elements that Sari claims as his contributions are protectable individually, and whether the arrangement as a whole is protectable; and second, whether any reasonable jury could find that the Chen Plans and the Highlighted Plans are extrinsically similar in terms of protectable features or overall arrangement.

14

**Stone and Stucco Façade**

Sari changed the front of the house in the Highlighted Plans by adding stone and stucco where the Reed Plans originally called for brick.  Adding stone and stucco to the façade of the house is not protectable under the AWCPA because stone and stucco is a staple building component. (Doc. 66-3 at 25 (stating that the stone and stucco façade was a feature of Sari's neighbor's house)); *see* 37 C.F.R. § 202.11(d) (explaining that staple building components cannot be registered).  More importantly, even if the stone and stucco façade was protectable, no reasonable jury could find that the Chen Plans and the Highlighted Plans are extrinsically similar in terms of façade because the Chen Plans call for an all-brick façade with no stone or stucco. (*Compare* Doc. 75-1 at 21, *with* Doc. 69-1 at 1).

**Center Window**

Sari replaced the two first-floor center windows in the Reed Plans with one large window in the Highlighted Plans.  Windows are standard features excluded from copyright protection. 37 C.F.R. § 202.11(d) ("The following structure, features or works cannot be registered . . . individual standard features, such as windows, doors, and other staple building components.").  Even if windows were protected, no reasonable jury could find that the center windows in the Chen Plans are extrinsically similar to the center window in the Highlighted Plans.  The Chen plans call for two lower windows lining up with two windows on the second floor, while the Highlighted Plans call for one large window on the first floor.  The styles and shapes of the windows in the two plans are also completely different. (*Compare* Doc. 75-1 at 21, *with* Doc. 69-1 at 1).

**Sloping Lot**

Sari adjusted the slope of the lot on the right side of the house and added two basement windows that were not present in the Reed Plans. Adjusting the slope of the lot is a not protectable element because it is driven by function rather than design. *See Humphreys*, 43 F. Supp. 3d at 661 (noting that design features must be "conceptually separable from the design's utilitarian aspects"). The slope of the lot in the Highlighted Plans necessarily deviated from the slope of the lot in the Reed Plans because the Highlighted Plans were for a home being built on a new lot in Lorton, not on Mr. Lee's lot at 9412 Braymore. If windows were protectable, Sari could argue that the basement windows inserted as a result of the sloping lot constituted design choices, but the Chen Plans are not extrinsically similar in that respect because they call for no basement windows on the front of the house. Furthermore, no reasonable jury could find the slopes of the two lots extrinsically similar because the two lots slope completely differently. The Highlighted Plans have a sharp slope on the right side while the Chen Plans call for a much more gradual slope. (*Compare* Doc. 75-1 at 21–22, *with* Doc. 69-1 at 1–2).

**Door to the Study**

Sari added a door leading into the study in the Highlighted Plans where the Reed Plans called for an open entrance. Like windows, doors are "staple building components" that may not be registered and are thus not entitled to protection. 37 C.F.R. § 202.11(d). Even if doors were protectable features, no reasonable jury could determine that the door leading into the study in the Chen Plans is extrinsically similar to the door leading into the study in the Highlighted Plans because neither set of plans gives any details about the interior doors. They only reflect the intent to place a door leading into the study rather than leaving the entrance open. (Doc. 69-2 at 4).

16

**Eight Windows Arranged in a Tic-Tac-Toe Pattern**

In the most noticeable change outside of the stone and stucco façade, Sari added eight windows arranged in a tic-tac-toe pattern to the back of the house on the Highlighted Plans where the fireplace was located in the Reed Plans. As stated above, windows are individual standard features not warranting protection. However, what Sari seeks to protect is the arrangement of eight windows in a tic-tac-toe pattern, and the arrangement of standard features is protectable. *See Charles W. Ross*, 496 F. App'x at 317 ("Congress intended to extend protection to the arrangement and composition of spaces and elements in architectural works."). The fact that Sari got the idea from Quaker Custom Homes, however, suggests that the windows may be a "standard configuration" not protectable under the AWCPA. (Doc. 66-3 at 26). Ultimately, whether the tic-tac-toe windows are protectable makes little difference because no reasonable jury could find that the plans are extrinsically similar in that respect. The Chen Plans do not have a tic-tac-toe arrangement of eight windows. They show a fireplace on the backside of the house where the window arrangement would be. (*Compare* Doc. 75-1 at 22, *with* Doc. 69-1 at 2).

**Fireplace on an Interior Wall**

With the rear exterior wall occupied by the eight windows in a tic-tac-toe pattern, Sari moved the fireplace to an interior wall in the same great room. A ubiquitous feature like a fireplace certainly fits within the "individual standard features" category precluding it from protection under the AWCPA. Even if it were protectable, though, no reasonable jury could find that the two plans are extrinsically similar with respect to the fireplace because the Chen Plans place the fireplace on the rear exterior wall of the house, while the Highlighted Plans place the fireplace on an interior wall. (*Compare* Doc. 75-1 at 22, *with* Doc. 69-1 at 2).

**Basement Exterior Door**

Sari added a walkout basement with French doors in the Highlighted Plans that were not present in the Reed Plans. As stated above, doors are individual standard features not protectable under the AWCPA. The addition of an exterior door also falls under the functional exception because it provides a point of ingress and egress. Even if a door could be protected under the Act, no reasonable jury could find that the two doors are extrinsically similar because the Highlighted Plans call for French doors while the Chen Plans only call for a standard exterior door. (*Compare* Doc. 75-1 at 23, *with* Doc. 69-1 at 3).

**Pantry**

Sari added a pantry off of the kitchen in the Highlighted Plans where the laundry room was in the Reed Plans. Pantries are individual standard features. There are a finite amount of places a builder can locate a pantry in a particular floor plan. Granting exclusive rights to place a pantry off a kitchen then would chill, rather than promote architectural innovation. *Cf. Logan Developers, Inc. v. Heritage Bldgs., Inc.*, No. 7:12-CV-323-F, 2014 WL 2547085, at *7 (E.D.N.C. June 5, 2014) (holding that closet placement was a standard feature because "there are only four possible walls on which a closet can be placed in any given room . . . many architectural designs will necessarily include closet placement on the same wall."). Even if a pantry were a protectable feature, no reasonable jury could find the Chen Plans and the Highlighted Plans extrinsically similar in that respect because the Chen Plans designate a walkthrough mudroom where the pantry is on the Highlighted Plans. (*Compare* Doc. 75-1 at 27, *with* Doc. 69-2 at 4).

**Laundry Room**

  With the space once occupied by the laundry room now occupied by the pantry, Sari moved the laundry room to the second floor. A laundry room is a standard feature for the same reason that a pantry is a standard feature. It is not, therefore, protectable under the AWCPA. Furthermore, Sari's choice to move the laundry room upstairs was driven by functional considerations and not design; he placed the laundry room upstairs "because it's much easier to get to on the second floor than on the first floor." (Doc. 66-3 at 9). Therefore, while the Chen Plans also place the laundry room upstairs, the choice of where to locate a washer and dryer is one of function and not form. Thus, Sari cannot protect the placement of the laundry room with a copyright.

**Extended Left Exterior Wall**

  Finally, Sari extended the rear of the left side of the house outward to bring it flush with the garage. Similar to the slope-angle adjustment, Sari cannot protect his extension of the left exterior wall because it serves a functional, rather than an aesthetic purpose. In his deposition from April 2, 2015, Sari noted that the effect of extending the wall was to "increase[] the size of the master bathroom upstairs and the kitchen downstairs." (Doc. 66-3 at 15). AHP concedes that both homes have the same second-story width of 58'8" (Doc. 67-1 at 31), so were extending the left exterior wall protectable, the two Plans would be extrinsically similar in that respect. However, extending the wall out is not protected under the AWCPA for obvious reasons. Doing so would mean granting a party exclusive rights to build a house of a certain width, thus hindering architectural advancement and directly conflicting with the statute's intent. Therefore, none of the elements that Sari claims are his contributions to the Highlighted Plans are individually protectable under the AWCPA.

19

**Overall Arrangement and Composition**

While Sari could not protect any of his contributions to the Highlighted Plans individually with a copyright, he may still have been able to protect the overall arrangement and composition of the work. 17 U.S.C. § 101 ("The work includes the overall form as well as the arrangement and composition of spaces and elements in the design."). In *Humphreys*, the plaintiff sought to enforce a copyright on an apartment building by combining nine unprotectable features into one protectable arrangement. 43 F. Supp. 3d at 676. The Court rejected the argument, holding that the arrangement constituted a standard configuration not protectable under the AWCPA. *Id.* In making its decision, the court pointed to multiple reports obtained in discovery that showed the plaintiff's arrangement was "wholly utilitarian in nature" and driven primarily by building codes." *Id.*

In this case, the Highlighted Plans represent a utilitarian arrangement as discussed *supra* and probably represent a standard configuration given the limited number of ways to set up a house with such a common floor plan, but assuming Sari could protect his arrangement, that protection would be razor thin. The Highlighted Plans are a derivative work and a work of architecture, two areas for which copyright protection is extremely weak. *See Harvester*, 716 F. Supp. 2d at 438–39 ("Copyright protection in architectural works, as with traditional compilations, is necessarily thin . . . As with compilations and architectural works, though, the copyright in a derivative work is thin." (citations and quotation marks omitted)). Sari could only protect the overall arrangement of the elements that *he* contributed to the Highlighted Plans, not the contributions from the Reed Plans which Reed copied from an existing house. *See* 17 U.S.C. § 103(b) ("The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed

20

in the work, and does not imply any exclusive right in the preexisting material."). Furthermore, because the house that the Highlighted Plans are based off of is a standard architectural style in the public domain, when comparing the Highlighted Plans to the Chen Plans "modest dissimilarities in dimensions and proportions of the plans or arrangement of features suggests they are not extrinsically similar." *Logan Developers, Inc. v. Heritage Bldgs., Inc.*, No. 7:12-CV-323-F, 2014 WL 2547085, at *8 (E.D.N.C. June 5, 2014) (citing *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 143 (4th Cir. 2000)).

Thus assuming, arguendo, that Sari owned a valid copyright, the scope of that copyright would be exceptionally limited, and given the more than modest dissimilarities between the Chen Plans and the Highlighted Plans, no reasonable jury could find that the two plans are extrinsically similar. Because even modest differences in the context of standard architectural floor plans in the public domain suggest that the plans are not extrinsically similar, Sari's copyright protection would only protect it from plans nearly identical to the Highlighted Plans in terms of the ten elements that Sari contributed. Here, seven of the ten elements on which Sari bases his copyright are either not present at all in the Chen Plans, or are substantially dissimilar. The remaining three—the extension of the left wall, the sloping lot, and the upstairs laundry room—do not approach the level of similarity Sari needs to show copyright infringement. Because Sari cannot, as a matter of law, prove extrinsic similarity, the Court grants AHP's Motion for Summary Judgment and it need not reach the second element of the substantial similarity test. *See Humphreys*, 43 F. Supp. 3d at 677–78. However, in the interest of completeness, the Court will address intrinsic similarity briefly.

## b. Intrinsic Similarity

Sari cannot meet the second element of the substantial similarity test because no reasonable jury could find that the Chen Plans are intrinsically similar to the Highlighted Plans. Intrinsic similarity looks at whether the intended audience—viewing the "total concept and feel of the works"—would "regard their aesthetic appeal as the same." *Humphreys*, 43 F. Supp. 3d at 678 (citations omitted). Absent a showing that the intended audience possesses some special expertise, the intended audience should be regarded as the lay public. *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 737 (4th Cir. 1990).

Here, the intended audience for the Highlighted Plans and the Chen Plans are persons interested in purchasing custom homes. No special expertise is needed to purchase a custom home; thus, the court evaluates intrinsic similarity from the perspective of the lay public. In this case, a member of the lay public would have to look very carefully at the two sets of plans to spot the similarities, absent the fact that the two share a floor plan—which Sari cannot copyright. The Highlighted Plans have a stone and stucco façade with double doors and a front-loading garage. The Chen plans have a brick façade with a single door, the garage is side-load, and the windows are arranged and styled differently. The back ends of the two houses are also highly dissimilar, with the Chen Plans featuring a central chimney where the Highlighted Plans feature nine windows arranged in a tic-tac-toe pattern. No reasonable jury could find that a layperson would confuse the two houses if not looking carefully; thus, Sari fails the second element of the substantial similarity test. Therefore, because no reasonable jury could find that AHP copied protected elements of Sari's copyright, the Court GRANTS AHP's Motion for Summary Judgment.[3]

---

[3] Because the Court grants AHP's Motion for Summary Judgment on the grounds that Sari cannot show either element of copyright infringement, it need not reach AHP's argument regarding an implied, non-exclusive license.

## 5. Attorneys' Fees

The Court denies AHP's request for reasonable attorneys' fees because it finds that Sari's belief that he owned a copyright was not objectively unreasonable. The Copyright Act allows a prevailing party in a copyright infringement suit to recovery reasonable attorneys' fees. 17 U.S.C. § 505. The Fourth Circuit has held that among other factors, a court ruling on attorneys' fees in a copyright infringement suit should consider (1) "the motivation of the parties," (2) "the objective reasonableness of the legal and factual positions advanced," (3) "the need in particular circumstances to advance considerations of compensation and deterrence." *Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 234 (4th Cir. 1993) (citations and quotation marks omitted). In determining the objective reasonableness of claims, the Court should consider "whether the positions advanced by the parties were frivolous, on the one hand, or well-grounded in law and fact, on the other." *Id.*

Here, Sari's motivation for his copyright infringement suit is unclear and the Court will not speculate, but the Court finds that the suit is not so objectively unreasonable as to warrant an award of attorneys' fees. Further, punishing a pro se plaintiff for an honest mistake regarding a murky area of intellectual property law does not serve the public interest. Sari believed that he could modify the Reed Plans, which were based on a house not subject to copyright because it was built prior to the AWCPA, and claim dominion over that work. His belief was reasonable in that the Copyright Act does allow a person to copyright a derivative work. 17 U.S.C. § 101. Although the Chen Plans were not similar in terms of altered elements, they were built with the same standard floor plan. While the Court strongly urges Sari to consult with counsel before bringing further lawsuits, the Court does not find Sari's confusion as to what exactly the AWCPA protects so inexcusable as to warrant a grant of attorneys' fees. AHP's point about

23

Sari's extensive history of litigation is noted. (*See* Doc. 67-1 at 11–12). However, as this is the first time Sari has attempted to bring *this* suit, as he is a pro se plaintiff, and as the Copyright Office did issue Sari a registration on the Highlighted Plans, the Court denies AHP's request for attorneys' fees.

## 6. Permanent Injunction

The Court denies AHP's request for a permanent injunction because AHP did not suffer an irreparable harm. To demonstrate that it is entitled to a permanent injunction, AHP must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Here, AHP provides no evidence pointing toward irreparable harm. AHP makes the conclusory statement that "it has had to expend time and resources defending itself from Sari's baseless accusations of copyright infringement." (Doc. 67-1 at 35). AHP supplies no facts about how this expenditure of resources has impacted its company irreparably or otherwise. The Court will not lightly issue a remedy at equity reserved for extraordinary circumstances. Therefore, the Court denies AHP's request for a permanent injunction.

### B. Counterclaims

For the reasons stated above, the Court grants AHP's first counterclaim seeking declaratory judgment. In contrast, the Court denies AHP's second, third, and fourth counterclaim asserting fraud in the copyright office, seeking injunctive relief, and requesting attorney's fees.

### IV. CONCLUSION

For the foregoing reasons, the Court grants AHP's Motion for Summary Judgment on Sari's copyright infringement claim and on AHP's counterclaim for declaratory judgment. No reasonable jury could find that Sari owned a valid copyright and even if Sari did own a valid copyright, no reasonable jury could find that the Chen Plans are substantially similar to the Highlighted Plans. While Sari's decision to proceed with this lawsuit was misguided, the Court finds that he did so with a good faith belief that he owned a copyright and that AHP might be infringing on that right. Therefore, the Court will not award AHP attorneys' fees. Accordingly, it is hereby

**ORDERED** that Defendant America's Home Place, Inc.'s Motion for Summary Judgment (Doc. 66) is **GRANTED** and it is further

**ORDERED** that Defendant America's Home Place, Inc.'s request for attorneys' fees is **DENIED**.

**IT IS SO ORDERED.**

ENTERED this ___ day of September, 2015.

Alexandria, Virginia

9/ 2 /2015

_____/s/_____
Gerald Bruce Lee
United States District Judge

25